IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:18-CV-455-D

JORGE SUAREZ,                              )
                                           )
              Plaintiff,                 )
                                           )
        v.                             )     **ORDER**
                                           )
CAMDEN PROPERTY TRUST,                     )
CAMDEN DEVELOPMENT, INC.,                  )
and CSP COMMUNITY OWNER, LP,               )
                                           )
              Defendants.                )

On July 30, 2018, Jorge Suarez ("Suarez" or "plaintiff"), on behalf of himself and others similarly situated, filed a complaint in Wake County Superior Court against Camden Property Trust ("Camden Property Trust"), Camden Development, Inc. ("Camden Development"), and CSP Community Owner, LP, f/k/a CSP Community Owner, LLC, d/b/a/ Camden Westwood ("Camden Westwood"; collectively, "defendants"), alleging violations of the North Carolina Debt Collection Act ("NCDCA"), N.C. Gen. Stat. § 75-50, et seq. [D.E. 1-6]. On September 21, 2018, defendants removed the action to this court under the Class Action Fairness Act of 2005 [D.E. 1].

On October 5, 2018, defendants moved to dismiss the complaint for lack of subject-matter jurisdiction and for failure to state a claim [D.E. 17] and filed a memorandum in support [D.E. 18]. On October 26, 2018, Suarez amended his complaint [D.E. 20]. On November 9, 2018, defendants moved to dismiss the amended complaint for lack of subject-matter jurisdiction and for failure to state a claim [D.E. 21] and filed a memorandum in support [D.E. 22]. On December 31, 2018, Suarez responded in opposition [D.E. 24]. On January 28, 2019, defendants replied [D.E. 26]. On February 1, 2019, Suarez alternatively moved to remand [D.E. 27] and filed a memorandum in

support [D.E. 28]. On March 15, 2019, defendants responded in opposition [D.E. 30]. On April 5, 2019, Suarez replied [D.E. 33]. As explained below, the court denies as moot defendants' motion to dismiss Suarez's complaint, denies in part and grants in part defendants' motion to dismiss Suarez's amended complaint, and denies as moot Suarez's motion to remand.

I.

On May 16, 2015, Suarez leased an apartment at Camden Westwood Apartments, which defendants own. See Am. Compl. [D.E. 20] ¶ 21. On August 28, 2016, after Suarez vacated his apartment, defendants sent a Final Account Statement (a "Statement") to Suarez. See id. ¶ 22; Ex. A [D.E. 20-1]. According to the Statement, Suarez owed defendants $147.76. See Am. Compl. [D.E. 20] ¶ 26; Ex. A [D.E. 20-1]. The Statement notified Suarez that "[a]ny balances not received within thirty (30) days will be sent to a [third] party collection agency." Ex. A [D.E. 20-1]. The Statement stated that interest "will begin accruing immediately on all balances sent to collections." Id.

Although Suarez paid $82.76 of his remaining balance, he refused to pay a $55.00 charge for "carpet stain removal" and a $10.00 charge to replace keys. See Am. Compl. [D.E. 20] ¶¶ 26–29. During the final walkthrough of Suarez's apartment, a leasing agent told Suarez that the apartment "looked okay" and that Suarez "had nothing to worry about." Id. ¶ 28. Suarez believed that any carpet stains were ordinary wear and tear and that the $55.00 charge was not appropriate. See id. Suarez also believed that, because he returned all of the keys to his apartment, the $10.00 charge for key replacement was not appropriate. See id. ¶ 29. Thus, Suarez believed that "he had fulfilled his obligations as a tenant and did not owe any additional amounts to [defendants]." Id. ¶ 31.

On September 17, 2016, defendants e-mailed Suarez an updated statement reflecting a new balance of $65.00. See id. ¶ 33; Ex. C [D.E. 20-3]. The updated statement also stated that any

unpaid balance would be referred to a collection agency in 30 days. See Am. Compl. [D.E. 20] ¶ 37; Ex. C [D.E. 20-3]. In addition, an employee stated in the e-mail that "[a]ny unpaid balance will go to a third party collections agency in 10 days and will begin accruing interest immediately." Ex. C [D.E. 20-3] 1. Although defendants sent these statements to all tenants with unpaid balances when their leases end, defendants only refer unpaid balances that exceed $100 and only after 60 days. See Am. Compl. [D.E. 20] ¶¶ 38, 42–45, 48, 54; Ex. D [D.E. 20-4]. Thus, Suarez alleges that these representations are deceptive because they mislead tenants into believing that defendants will refer any unpaid balances in 30 days regardless of the amount owed. See Am. Compl. [D.E. 20] ¶¶ 50–67.

Suarez alleges that these "empty threats" potentially cause similarly situated individuals to send money to defendants that could be used for food, utility bills, housing, or rent. Id. ¶ 58; see id. ¶ 59. According to Suarez, if consumers knew that defendants would only refer their account to a third-party collection agency in 60 days, and then only if the unpaid balance exceeded $100.00, consumers would modify their actions accordingly. See id. ¶¶ 61–63. Because of defendants' representations and his unpaid balance of $65.00, Suarez suffered "anxiety, stress, anger, frustration, and mental anguish." Id. ¶ 72; see id. ¶¶ 73–74, 80–88. Suarez feared that third-party collection agencies would harass him and charge him higher fees, that his employer would discover his delinquencies, and that his credit score would fall. See id. ¶¶ 75–78. Suarez claims that, if he knew defendants' actual policies about referring unpaid debts to collection agencies, he would not have lost sleep either from anxiety or from time spent researching his defense. See id. ¶¶ 90–91. Suarez alleges that defendants violated the NCDCA by sending deceptive Statements to all vacating tenants and purports to sue on behalf of all former tenants who received a Statement in the four years before Suarez filed his complaint in state court. See id. ¶¶ 92–142.

3

II.

Defendants first contend that Suarez lacks Article III standing. To invoke the power of a federal court, a plaintiff must demonstrate that he has standing under Article III of the Constitution. See Beck v. McDonald, 848 F.3d 262, 269 (4th Cir. 2017); Doe v. Obama, 631 F.3d 157, 160 (4th Cir. 2011). Absent Article III standing, a court lacks subject-matter jurisdiction to hear a plaintiff's claims. See White Tail Park, Inc. v. Stroube, 413 F.3d 451, 458–59 (4th Cir. 2005). To establish Article III standing, a plaintiff must show that "(1) [the plaintiff] has suffered an injury in fact that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc., 528 U.S. 167, 180–81 (2000); see Lujan v. Defs. of Wildlife, 504 U.S. 555, 560–61 (1992); Hutton v. Nat'l Bd. of Exam'rs in Optometry, Inc., 892 F.3d 613, 619 (4th Cir. 2018); Doe, 631 F.3d at 160. These requirements are the "irreducible constitutional minimum of standing," Lujan, 504 U.S. at 560, and they "guarantee that the plaintiff has a sufficient personal stake in the outcome of a dispute to render judicial resolution of it appropriate." Long Term Care Partners, LLC v. United States, 516 F.3d 225, 231 (4th Cir. 2008) (quotation omitted); Emery v. Roanoke City Sch. Bd., 432 F.3d 294, 298 (4th Cir. 2005).

Injury-in-fact is the "first and foremost" of the three requirements of Article III standing. Spokeo, Inc. v. Robins, 136 S. Ct. 1540, 1547 (2016) (alteration omitted). "To establish injury in fact, a plaintiff must show that he or she suffered an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical." Id. at 1548 (quotations omitted); see Deal v. Mercer Cty. Bd. of Educ., 911 F.3d 183, 187 (4th Cir. 2018), cert. docketed, No. 18-1487 (U.S. May 29, 2019). Although an injury must be concrete (i.e., real and not

4

abstract), it need not be tangible. See Spokeo, 136 S. Ct. at 1548–49; Curtis v. Propel Prop. Tax Funding, LLC, 915 F.3d 234, 240–41 (4th Cir. 2019); Griffin v. Dep't of Labor Fed. Credit Union, 912 F.3d 649, 654 (4th Cir. 2019); cf. generally Pleasant Grove City v. Summum, 555 U.S. 460 (2009); Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah, 508 U.S. 520 (1993).

A "violation of a statutory right" does not "automatically satisf[y] the injury-in-fact requirement" of Article III. Frank v. Gaos, 139 S. Ct. 1041, 1046 (2019) (per curiam); see Spokeo, 136 S. Ct. at 1549. Rather, a plaintiff alleging that a defendant violated his statutory rights still must have "a personal stake in the case," which is "the traditional core of standing." Krakauer v. Dish Network, LLC, 925 F.3d 643, 653 (4th Cir. 2019). "Private litigation . . . must vindicate the plaintiffs' interests, rather than serve solely [as] a vehicle for ensuring legal compliance." Id. However, a "violation of a procedural right granted by statute can be sufficient" for Article III standing. Spokeo, 136 S. Ct. at 1549; see Fed. Election Comm'n v. Akins, 524 U.S. 11, 20–25 (1998). For example, an "informational injury [can be] a type of intangible injury that can constitute an Article III injury in fact." Dreher v. Experian Info. Sols., Inc., 856 F.3d 337, 345 (4th Cir. 2017) (quotation omitted).

A defendant can mount either a facial or a factual attack upon standing. See Hutton, 892 F.3d at 620–21; Kerns v. United States, 585 F.3d 187, 192 (4th Cir. 2009); Adams v. Bain, 697 F.2d 1213, 1219 (4th Cir. 1982). A facial attack asserts that a complaint fails to allege facts upon which to base subject-matter jurisdiction. See Hutton, 892 F.3d at 621 n.7; Adams, 697 F.2d at 1219. The court takes the factual allegations of the complaint as true when a defendant makes a facial challenge to subject-matter jurisdiction. See Beck, 848 F.3d at 270; Kerns, 585 F.3d at 192; Adams, 697 F.2d at 1219.

In evaluating a class action complaint, the Fourth Circuit analyzes "standing based on the

5

allegations of personal injury made by the named plaintiffs." Hutton, 892 F.3d at 620 (quotation omitted); see Beck, 848 F.3d at 269; Doe, 631 F.3d at 160. Thus, if Suarez himself lacks standing, this court lacks subject-matter jurisdiction.

As for defendants' challenge to Suarez's standing to sue, courts generally have held that recipients of deceptive communications from debt collectors have standing to sue under the Federal Debt Collection Practices Act ("FDCPA"), even absent economic harm. See, e.g., Barnhill v. FirstPoint, Inc., No. 1:15-CV-892, 2017 WL 2178439, at *5–6 (M.D.N.C. May 17, 2017) (unpublished); Velez v. Healthcare Revenue Recovery Grp., LLC, No. 1:16CV377, 2017 WL 1476144, at *3–4 (M.D.N.C. Apr. 24, 2017) (unpublished); Biber v. Pioneer Credit Recovery, Inc., 229 F. Supp. 3d 457, 465 (E.D. Va. 2017); Brown v. Transurban USA, Inc., 144 F. Supp. 3d 809, 827 (E.D. Va. 2015); cf. Pender v. Bank of Am. Corp., 788 F.3d 354, 366 (4th Cir. 2015).[1] The FDCPA "create[s] a right to accurate debt-related information and non-abusive collection practices," and a deceptive communication "concretely harms a debtor by detrimentally affecting that debtor's decisions regarding his debt." Biber, 229 F. Supp. 3d at 465. Moreover, a plaintiff's emotional distress, anger, and frustration can distinguish cognizable injuries from bare procedural violations. See, e.g., Spokeo, 136 S. Ct. at 1549; Moore v. Blibaum & Assocs., P.A., 693 F. App'x 205, 206 (4th Cir. 2017) (per curiam) (unpublished); Ben-Davies v. Blibaum & Assocs., P.A., 695 F. App'x 674, 676–77 (4th Cir. 2017) (per curiam) (unpublished).

Taking Suarez's factual allegations as true, Suarez received a deceptive communication from defendants concerning Suarez's debt that caused him to experience emotional distress, anger, and

---

[1] Courts applying North Carolina law have looked to the FDCPA to construe analogous provisions in the NCDCA. See, e.g., Reid v. Ayers, 138 N.C. App. 261, 263–64, 531 S.E.2d 231, 233–34 (2000); Redmond v. Green Tree Servicing, LLC, 941 F. Supp. 2d 694, 698 (E.D.N.C. 2013); DIRECTV, Inc. v. Cephas, 294 F. Supp. 2d 760, 764 n.2 (M.D.N.C. 2003).

6

frustration. These intangible harms "actually exist[ed]." Spokeo, 136 S. Ct. at 1548. Thus, Suarez suffered a particularized and concrete injury-in-fact. Moreover, to the extent that the defendants suggest that Suarez's harms are not fairly traceable to the Statement, see [D.E. 26] 3–4, the court rejects the argument. Suarez's allegations concern Suarez's mistaken beliefs about defendants' practices arising from the Statement, and the alleged harms are fairly traceable to the Statement. Accordingly, Suarez has Article III standing, and the court denies defendants' motion to dismiss for lack of subject-matter jurisdiction.

As for Suarez's alternative motion to remand, Suarez sought remand only if the court held that Suarez lacks standing [D.E. 27]. Because Suarez has standing, the court denies Suarez's motion to remand as moot.

### III.

A motion to dismiss under Rule 12(b)(6) tests the complaint's legal and factual sufficiency. See Ashcroft v. Iqbal, 556 U.S. 662, 677–80 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 554–63 (2007); Coleman v. Md. Court of Appeals, 626 F.3d 187, 190 (4th Cir. 2010), aff'd, 566 U.S. 30 (2012); Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009); Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008). To withstand a Rule 12(b)(6) motion, a pleading "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Iqbal, 556 U.S. at 678 (quotation omitted); see Twombly, 550 U.S. at 570; Giarratano, 521 F.3d at 302. In considering the motion, the court must construe the facts and reasonable inferences "in the light most favorable to the [nonmoving party]." Massey v. Ojaniit, 759 F.3d 343, 352 (4th Cir. 2014) (quotation omitted); see Clatterbuck v. City of Charlottesville, 708 F.3d 549, 557 (4th Cir. 2013), abrogated on other grounds by Reed v. Town of Gilbert, 135 S. Ct. 2218 (2015). A court need not accept as true a complaint's legal conclusions, "unwarranted

7

inferences, unreasonable conclusions, or arguments." Giarratano, 521 F.3d at 302 (quotation omitted); see Iqbal, 556 U.S. at 678–79. Rather, a plaintiff's factual allegations must "nudge[ ] [his] claims," Twombly, 550 U.S. at 570, beyond the realm of "mere possibility" into "plausibility." Iqbal, 556 U.S. at 678–79.

When evaluating a motion to dismiss, a court considers the pleadings and any materials "attached or incorporated into the complaint." E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc., 637 F.3d 435, 448 (4th Cir. 2011); see Fed. R. Civ. P. 10(c); Goines v. Valley Cmty. Servs. Bd., 822 F.3d 159, 165–66 (4th Cir. 2016); Thompson v. Greene, 427 F.3d 263, 268 (4th Cir. 2005). A court also may consider a document submitted by a moving party if it is "integral to the complaint and there is no dispute about the document's authenticity" without converting the motion into one for summary judgment. Goines, 822 F.3d at 166. Additionally, a court may take judicial notice of public records when evaluating a motion to dismiss for failure to state a claim. See, e.g., Fed. R. Evid. 201; Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007); Philips v. Pitt Cty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009).

Subject-matter jurisdiction is based on diversity of citizenship, and the court applies state substantive law and federal procedural rules. See Erie R.R. v. Tompkins, 304 U.S. 64, 78–80 (1938); Dixon v. Edwards, 290 F.3d 699, 710 (4th Cir. 2002). North Carolina law applies. Accordingly, this court must predict how the Supreme Court of North Carolina would rule on any disputed state-law issue. See Twin City Fire Ins. Co. v. Ben Arnold-Sunbelt Beverage Co. of S.C., 433 F.3d 365, 369 (4th Cir. 2005). In doing so, the court must look first to opinions of the Supreme Court of North Carolina. See id.; Stahle v. CTS Corp., 817 F.3d 96, 100 (4th Cir. 2016). If there are no governing opinions from that court, this court may consider the opinions of the North Carolina Court of Appeals, treatises, and "the practices of other states." Twin City Fire Ins. Co., 433 F.3d at

369 (quotation omitted).[2] In predicting how the highest court of a state would address an issue, this court must "follow the decision of an intermediate state appellate court unless there [are] persuasive data that the highest court would decide differently." Toloczko, 728 F.3d at 398 (quotation omitted); Hicks v. Feiock, 485 U.S. 624, 630 & n.3 (1988). Moreover, in predicting how the highest court of a state would address an issue, this court "should not create or expand a [s]tate's public policy." Time Warner Entm't-Advance/Newhouse P'ship v. Carteret-Craven Elec. Membership Corp., 506 F.3d 304, 314 (4th Cir. 2007) (alteration and quotation omitted); Day & Zimmerman, Inc. v. Challoner, 423 U.S. 3, 4 (1975) (per curiam); Wade v. Danek, Inc., 182 F.3d 281, 286 (4th Cir. 1999).

"The NCDCA prohibits debt collectors from engaging in unfair debt collection practices, including the use of threats, coercion, harassment, unreasonable publications of the consumer's debt, deceptive representations to the consumer, or other unconscionable means." Ross v. FDIC, 625 F.3d 808, 817 (4th Cir. 2010); see N.C. Gen. Stat. §§ 75-50–75-56. An NCDCA claim has three threshold requirements. See Davis Lake Cmty. Ass'n v. Feldmann, 138 N.C. App. 292, 295, 530 S.E.2d 865, 868 (2000); Reid, 138 N.C. App. at 263, 531 S.E.2d at 233. First, the "obligation owed must be a 'debt;' second, the one owing the obligation must be a 'consumer;' and third, the one trying to collect the obligation must be a 'debt collector.'" Reid, 138 N.C. App. at 263, 531 S.E.2d at 233; see Glenn v. FNF Servicing, Inc., No. 5:12-CV-703-D, 2013 WL 4095524, at *3 (E.D.N.C. Aug. 13, 2013) (unpublished). A plaintiff also must establish the elements of a UDTPA claim: (1) an unfair or deceptive act (2) in or affecting commerce (3) proximately causing injury. See Ross, 625 F.3d at 817; Feldmann, 138 N.C. App. at 296, 530 S.E.2d at 868; Reid, 138 N.C. App. at 266, 531 S.E.2d

---

[2] North Carolina does not have a mechanism to certify questions of state law to its Supreme Court. See Town of Nags Head v. Toloczko, 728 F.3d 391, 397–98 (4th Cir. 2013).

at 235; Campbell v. Wells Fargo Bank, N.A., 73 F. Supp. 3d 644, 649 (E.D.N.C. 2014).

An act "is unfair when it offends public policy and when [it] is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers." Walker v. Branch Banking & Tr. Co., 133 N.C. App. 580, 583, 515 S.E.2d 727, 729 (1999) (quotation omitted); see Fritz v. Duke Energy Carolinas, LLC, No. 5:13-CV-724-D, 2014 WL 3721373, at *3–4 (E.D.N.C. July 24, 2014) (unpublished). In the context of debt collection practices, such acts include threats, coercion, harassment, deceptive representations, and unconscionable means. See N.C. Gen. Stat. §§ 75-51–75-55; Feldmann, 138 N.C. App. at 296, 530 S.E.2d at 868; Fritz, 2014 WL 3721373, at *3. To state a claim under section 75-54, a plaintiff must plausibly allege that "the act complained of possessed the tendency or capacity to mislead, or created the likelihood of deception." Forsyth Mem'l Hosp., Inc. v. Contreras, 107 N.C. App. 611, 614, 421 S.E.2d 167, 169–70 (1992) (quotation omitted). A plaintiff "need not show deliberate acts of deceit or bad faith." Wilkes Nat'l Bank v. Halvorsen, 126 N.C. App. 179, 183, 484 S.E.2d 582, 585 (1997) (quotation omitted).

As for Suarez's section 75-54 claim, Suarez alleges that defendants stated that any unpaid balance would be referred to a third-party collections agency within 30 days but that defendants did not intend to refer unpaid balances less than $100 or less than 60-days old. See Am. Compl. [D.E. 20] ¶¶ 37, 40–45. Suarez alleges that the Statement had the tendency or capacity to mislead or deceive Suarez as to defendants' intentions in referring unpaid balances to collection agencies. See Contreras, 107 N.C. App. at 614, 421 S.E.2d at 169–70; Fritz, 2014 WL 3721373, at *4. Section 75-54(4) lists representations that "falsely represent[] the creditor's rights or intentions" as actionable deceptive representations. N.C. Gen. Stat. § 75-54(4); cf. Koepplinger v. Seterus, Inc., No. 1:17-CV-995, 2018 WL 4055268, at *10 (M.D.N.C. Aug. 24, 2018) (unpublished), report and recommendation adopted, No. 1:17-CV-995, 2018 WL 4401738 (M.D.N.C. Sept. 14, 2018)

(unpublished). Thus, Suarez has plausibly alleged a section 75-54 claim.

As for causation, for claims arising from an alleged misrepresentation, "actual reliance requires that the plaintiff have affirmatively incorporated the alleged misrepresentation into his or her decision-making process: if it were not for the misrepresentation, the plaintiff would likely have avoided the injury altogether." Bumpers v. Cmty. Bank of N. Va., 367 N.C. 81, 89, 747 S.E.2d 220, 227 (2013); see Rikos v. Procter & Gamble Co., 799 F.3d 497, 517 (6th Cir. 2015). Detrimental reliance must be both actual and reasonable. See Bumpers, 367 N.C. at 89–90, 747 S.E.2d at 227; Collins v. First Fin. Servs., Inc., No. 7:14-CV-288-FL, 2016 WL 589688, at *13 (E.D.N.C. Feb. 10, 2016) (unpublished). Non-economic harm, such as emotional distress, can be cognizable injuries under the NCDCA. See, e.g., Ross, 625 F.3d at 818. Suarez alleges that, but for defendants' misrepresentations, he would not have suffered emotional distress because of his mistaken belief that defendants would refer his unpaid balance to a third-party collection agency. See, e.g., Am. Compl. [D.E. 20] ¶¶ 85–91. Accordingly, Suarez has plausibly alleged proximate causation, and the claim ekes across the line from possibility to plausibility. Whether this claim will survive a motion for summary judgment is an issue for another day.

As for Suarez's section 75-51 claim, section 75-51 forbids debt collectors from using "any unfair threat, coercion, or attempt to coerce" to collect a debt, including by "[t]hreatening to take any action not in fact taken in the usual course of business, unless it can be shown that such threatened action was actually intended to be taken in the particular case in which the threat was made." N.C. Gen. Stat. § 75-51(7). The parallel FDCPA provision forbids debt collectors from threatening "to take any action . . . that is not intended to be taken." 15 U.S.C. § 1692e(5). The FDCPA provision applies to false threats of litigation. See, e.g., Mavilla v. Absolute Coll. Serv., Inc., 539 F. App'x 202, 207 (4th Cir. 2013) (per curiam) (unpublished); United States v. Nat'l Fin. Servs., Inc., 98 F.3d

131, 135–36 (4th Cir. 1996). Suarez alleges that the Statement said that defendants would refer his unpaid balance to a third-party collection agency when, in reality, defendants do not do so in the usual course of business for unpaid debts as small as his. Suarez's section 75-51 claim ekes across the line from possibility to plausibility. Whether this claim will survive a motion for summary judgment is an issue for another day.

As for Suarez's section 75-55 claim, section 75-55 forbids debt collectors from "collect[ing] or attempt[ing] to collect any debt by the use of any unconscionable means." N.C. Gen. Stat. § 75-55. Suarez's allegations do not plausibly allege that defendants engaged in any conduct that section 75-55 lists as an unconscionable means. See N.C. Gen. Stat. § 75-55(1)–(4). Although section 75-55's list is not exhaustive, Suarez's allegations merely repackage defendants' allegedly deceptive conduct. See Am. Compl. [D.E. 20] ¶¶ 134–41. Accordingly, Suarez has not plausibly alleged a section 75-55 claim. Thus, the court grants defendants' motion to dismiss the claim.

IV.

In sum, the court DENIES AS MOOT defendants' motion to dismiss Suarez's original complaint [D.E. 17], DENIES IN PART and GRANTS IN PART defendants' motion to dismiss Suarez's amended complaint [D.E. 21], and DENIES AS MOOT Suarez's motion to remand [D.E. 27]. The clerk shall continue management of the case.

SO ORDERED. This 29 day of July 2019.

JAMES C. DEVER III
United States District Judge

12