-IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:18-CV-455-D

JORGE SUAREZ,                           )
                                        )
            Plaintiff,                  )
                                        )
    v.                                  )    **ORDER**
                                        )
CAMDEN PROPERTY TRUST,                  )
CAMDEN DEVELOPMENT, INC.,               )
and CSP COMMUNITY OWNER, LP,            )
                                        )
            Defendants.                 )

On October 9, 2019, Jorge Suarez ("Suarez" or "plaintiff") moved to dismiss the breach of contract counterclaim of Camden Property Trust, Camden Development, Inc. ("Camden Development"), and CSP Community Owner, LP, f/k/a CSP Community Owner, LLC, d/b/a Camden Westwood ("Camden Westwood"; collectively, "defendants") [D.E. 40] and filed a memorandum in support [D.E. 41]. On November 20, 2019, defendants amended their breach of contract counterclaim [D.E. 46]. On December 13, 2019, Suarez moved to dismiss defendants' amended counterclaim [D.E. 47] and filed a memorandum in support [D.E. 48]. On January 3, 2020, defendants responded in opposition [D.E. 50]. On February 7, 2020, Suarez replied [D.E. 59]. As explained below, the court grants Suarez's motion to dismiss the amended counterclaim.

I.

The court discussed in detail Suarez's factual allegations and claims against defendants in the court's order granting in part and denying in part defendants' motion to dismiss Suarez's amended complaint for failure to state a claim, or for lack of subject-matter jurisdiction. See [D.E.

36]. In essence, after Suarez vacated his apartment at Camden Westwood Apartments, defendants sent a Final Account Statement (a "statement") to Suarez reflecting a balance of $147.76 owed to defendants. See id. at 2; Am. Compl. [D.E. 20] ¶¶ 21–22, 26. The statement stated that Suarez had 30 days to satisfy the balance before it was sent to a third-party collection agency, and that once sent to the collection agency, interest began accruing immediately. See [D.E. 36] 2; Ex. A. [D.E. 20-1]. Suarez paid $82.76 of the outstanding balance, but refused to pay a $55.00 "carpet stain removal" charge and a $10.00 key replacement charge. See [D.E. 36] 2; Am. Compl. at ¶¶ 26–29. Defendants then sent Suarez another statement reflecting a $65.00 outstanding balance (i.e., the "carpet stain removal" charge and the key replacement charge). That statement also said that Suarez had 10 days to satisfy the outstanding balance before it was sent to a third-party collection agency, after which interest would accrue. See [D.E. 36] 2–3. As for the first statement, Suarez contends that he fulfilled his obligations and did not owe the amounts defendants requested. As for the second statement, Suarez alleges that defendants' representations are deceptive. See id. at 2–3.

Defendants assert a breach of contract counterclaim against Suarez based on the rental agreement he signed concerning his apartment lease at Camden Westwood. See Ans. [D.E. 46] 16–18. Defendants allege that Suarez breached the terms of the rental agreement when he failed to pay the "carpet stain removal" charge and the key replacement charge. See id. The rental agreement states:

> In the event that any damage or loss to Owner is caused by Resident, Occupants of the Unit or their respective guests or invitees (including contractors), Resident shall be liable for such damage or loss and shall immediately reimburse Owner for such damage or loss.

See id. at 17. The rental agreement also states:

> [I]n the event Resident defaults under this Lease, Resident shall be liable to the fullest extent allowed by applicable law for . . . any court costs and reasonable

2

attorneys' fees incurred by [Camden] Owner to enforce this Lease . . . .

See id. Defendants contend that the rental agreement required Suarez to return his keys to defendants, and that the rental agreement authorized defendants to charge Suarez a fee for carpet cleaning. See id. Because Suarez did not pay the "carpet stain removal" charge and the key replacement charge, defendants argue that Suarez breached the rental agreement. See id. at 18.

II.

A motion to dismiss under Rule 12(b)(1) tests subject-matter jurisdiction, which is the court's "statutory or constitutional power to adjudicate the case." Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 89 (1998) (emphasis omitted).[1] A federal court "must determine that it has subject-matter jurisdiction over [a claim] before it can pass on the merits of that [claim]." Constantine v. Rectors & Visitors of George Mason Univ., 411 F.3d 474, 479–80 (4th Cir. 2005). In making that determination, the court "may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." Velasco v. Gov't of Indonesia, 370 F.3d 392, 398 (4th Cir. 2004); see Al Shimari v. CACI Premier Tech., Inc., 840 F.3d 147, 154 (4th Cir. 2016); Goines v. Valley Cmty. Servs. Bd., 822 F.3d 159, 165–66 (4th Cir. 2016); In re KBR, Inc. v. Burn Pit Litig., 744 F.3d 326, 333 (4th Cir. 2015); Williams v. United States, 50 F.3d 299, 304 (4th Cir. 2005) (noting that "the court may consider the evidence beyond the scope of the pleadings

---

[1] After Suarez moved to dismiss defendants' counterclaim under Rule 12(b)(1), see [D.E. 40], defendants moved to amend their answer and counterclaim as of right. See [D.E. 46]; Fed R. Civ. P. 15(a)(1)(B). Thus, defendants' original answer and counterclaim is no longer operative, and Suarez's motion to dismiss defendants' counterclaim is moot. See Fantasy, Inc. v. Fogarty, 984 F.2d 1524, 1529 n.2 (9th Cir. 1993), reversed on other grounds, 510 U.S. 517 (1994); Maaco Franchisor SPV, Inc. v. Kennevan, LLC, No. 3:20-cv-149-MOC-DCK, 2020 WL 2926465, at *1 (W.D.N.C. June 3, 2020) (unpublished); see also Fawzy v. Wauquiez Boats SNC, 873 F.3d 451, 455 (4th Cir. 2017); Young v. City of Mount Ranier, 238 F.3d 567, 573 (4th Cir. 2001). Accordingly, the court analyzes Suarez's motion to dismiss defendants' amended counterclaim.

3

to resolve factual disputes concerning jurisdiction."). If, however, "jurisdictional facts are inextricably intertwined with those central to the merits, the court should resolve the relevant factual disputes only after appropriate discovery." Kerns v. Williams, 585 F.3d 187, 193 (4th Cir. 2009); see Al Shimari, 840 F.3d at 154. Defendants, as the parties asserting that this court has subject-matter jurisdiction over the counterclaim, must prove that subject-matter jurisdiction exists. See, e.g., Steel Co., 523 U.S. at 103–04; Evans v. B.F. Perkins Co., 166 F.3d 642, 647 (4th Cir. 1999); Goldstar (Panama) S.A. v. United States, 967 F.2d 965, 967 (4th Cir. 1992); Richmond, Fredericksburg & Potomac R.R. v. United States, 945 F.2d 765, 768 (4th Cir. 1991).

The court does not have diversity or federal question jurisdiction over defendants' North Carolina state-law breach of contract counterclaim. Cf. 28 U.S.C. §§ 1331, 1332. Thus, the court must assess the counterclaim's status as "compulsory" or "permissive." If permissive, the court must determine whether the court has subject-matter jurisdiction over the counterclaim under 28 U.S.C. § 1367(a). See, e.g., Painter v. Harvey, 863 F.2d 329, 331 (4th Cir. 1988). The Fourth Circuit requires that a permissive counterclaim have its own "independent jurisdictional base." Id.; see Whigham v. Beneficial Fin. Co., 599 F.2d 1322, 1323 (4th Cir. 1979); Sue & Sam Mfg. Co. v. B-L-S Constr. Co., 538 F.2d 1048, 1051 (4th Cir. 1976). In contrast, a compulsory counterclaim need not have its own jurisdictional base. See Painter, 863 F.2d at 331; Sue & Sam Mfg. Co., 538 F.2d at 1051; see also Vaughan v. Recall Total Info. Mgmt., Inc., 217 F. App'x. 211, 223 n.18 (4th Cir. 2007) (per curiam) (unpublished); Peter Farrell Supercars, Inc. v. Monsen, 82 F. App'x. 293, 298 (4th Cir. 2003) (per curiam) (unpublished). Accordingly, the court first determines whether the counterclaim is compulsory or permissive.

A compulsory counterclaim "arises out of the transaction or occurrence that is the subject matter of the opposing party's claim." Fed. R. Civ. P. 13(a)(1)(A); see Painter, 863 F.2d at 332. A

4

permissive counterclaim is defined in the negative as "any claim that is not compulsory." Fed. R. Civ. P. 13(b). The Fourth Circuit has identified four questions to ask to help determine whether a counterclaim is compulsory:

> (1) Are the issues of fact and law raised in the claim and counterclaim largely the same? (2) Would res judicata bar a subsequent suit on the party's counterclaim, absent the compulsory counterclaim rule? (3) Will substantially the same evidence support or refute the claim as well as the counterclaim? and (4) Is there any logical relationship between the claim and counterclaim?

Painter, 863 F.2d at 331; see Equitrans, L.P. v. Moore, 725 F. App'x 221, 224 (4th Cir. 2018) (per curiam) (unpublished); Q Int'l Courier Inc. v. Smoak, 441 F.3d 214, 219 (4th Cir. 2006); Sue & Sam Mfg. Co., 538 F.2d at 1051–53. "[T]he res judicata test cannot be the controlling one." Painter, 863 F.3d at 333. These questions help focus the inquiry, but the court "need not answer all these questions in the affirmative for the counterclaim to be compulsory." Painter, 863 F.2d at 331; see Moore, 725 F. App'x at 224. Rather, a court should interpret the Rule "flexibl[y]" and "realistic[ally]" to achieve the Rule's purpose. Sue & Sam Mfg. Co., 538 F.2d at 1051.

The parties do not dispute the facts relevant to the jurisdictional analysis under Rule 12(b)(1). Accordingly, the court resolves the jurisdictional question without discovery. See Al Shimari, 840 F.3d at 154; Kerns, 585 F.3d at 193.

In his complaint, Suarez alleges a claim under the North Carolina Debt Collection Act ("NCDCA"), N.C. Gen. Stat. § 75-50, et seq. See Am. Compl. at ¶¶ 107–42. To prove a claim under the NCDCA, a party must demonstrate: (1) "the obligation owed" is a "debt"; (2) "the one owing the obligation" is a "consumer"; and (3) "the one trying to collect the obligation" is a "debt collector." Reid v. Ayers, 138 N.C. App. 261, 263, 531 S.E.2d 231, 233 (2000) (quotations omitted); see N.C. Gen. Stat. § 75-50(1)–(3); Davis Lake Cmty. Ass'n, Inc. v. Feldmann, 138 N.C. App. 292, 295, 530 S.E.2d 865, 868 (2000). If those requirements are met, plaintiff must further

5

demonstrate "(1) an unfair act (2) in or affecting commerce (3) proximately causing injury." Feldmann, 138 N.C. App. at 296, 530 S.E.2d at 868; see Dalton v. Camp, 353 N.C. 647, 656, 548 S.E.2d 704, 711 (2001); Spitzer-Tremblay v. Wells Fargo Bank, N.A., 250 N.C. App. 508, 793 S.E.2d 281, 2016 WL 6695825, at *4 (Nov. 15, 2016) (unpublished table decision).

To prove its breach of contract counterclaim, defendants must show: (1) the existence of a valid contract, and (2) breach of the terms of that contract. See McLamb v. T.P. Inc., 173 N.C. App. 586, 588, 619 S.E.2d 577, 580 (2005); Poor v. Hill, 138 N.C. App. 19, 26, 530 S.E.2d 838, 843 (2000). A breach of a contract occurs where there is "[n]on-performance[,] . . . unless the person charged . . . shows some valid reason which may excuse the non-performance; and the burden of doing so rests upon him." Cater v. Barker, 172 N.C. App. 441, 447, 617 S.E.2d 113, 117 (2005), aff'd, 360 N.C. 357, 625 S.E.2d 778 (2006) (quotation omitted); see Abbington SPE, LLC v. U.S. Bank, Nat'l Ass'n, 352 F. Supp. 3d 508, 517 (E.D.N.C. 2016), aff'd, 698 F. App'x 750 (4th Cir. 2017) (per curiam) (unpublished); Michael Borovsky Goldsmith LLC v. Jewelers Mut. Ins. Co., 359 F. Supp. 3d 306, 311 (E.D.N.C. 2019).

As for the first Painter factor, the issues of law and fact are not "largely the same" concerning Suarez's NCDCA claim and defendants' breach of contract counterclaim. Painter, 863 F.2d at 331. Defendants' counterclaim concerns the rental agreement and the parties' contractual obligations under that agreement. In contrast, Suarez's claim concerns defendants' alleged actions to collect the alleged debt. Courts analyzing FDCPA claims and counterclaims seeking to collect a debt underlying plaintiffs FDCPA claim make precisely this distinction. See Deitmyer v. Ryback, No. ELH-18-2002, 2019 WL 3587883, at *10–11 (D. Md. Aug. 6, 2019) (unpublished) (collecting cases); O'Fay v. Sessoms & Rodgers, P.A., No. 5:08-CV-615-D, 2010 WL 9478988, at *5 (E.D.N.C. Feb. 9, 2010) (unpublished) (collecting cases). And North Carolina courts look to decisions

6

analyzing the FDCPA when interpreting the NCDCA. See, e.g., Ayers, 138 N.C. App. at 263, 531 S.E.2d at 233. To be sure, Suarez must demonstrate that the alleged debt exists to prove his FDCPA claim, and to do so he likely must reference the rental agreement. Thus, there is a logical nexus between the alleged breach of the rental agreement and Suarez's NCDCA claim. "A FDCPA claim, however, does not focus on the validity of the debt, but instead on the use of unfair methods to collect it." Bauman v. Bank of Am., N.A., 808 F.3d 1097, 1102 (6th Cir. 2015) (emphasis added) (quotation omitted). The same principle applies to Suarez's NCDCA claim. Moreover, defendants' breach of contract claim entirely focuses on the alleged debt's validity. See Ans. at 16–18. Accordingly, the evidence needed to demonstrate both claims is not "substantially" the same.

As for res judicata, under North Carolina law, the doctrine of res judicata bars parties from relitigating issues that the parties raised or could have raised in a prior action:

> Where a second action or proceeding is between the same parties as a first action or proceeding, the judgment in the former action or proceeding is conclusive in the latter not only as to all matters actually litigated and determined, but also as to all matters which could properly have been litigated and determined in the former action or proceeding.

King v. Neese, 233 N.C. 132, 136, 63 S.E.2d 123, 126 (1951); see Fickley v. Greystone Enters., Inc., 140 N.C. App. 258, 260, 536 S.E.2d 331, 333 (2000); Young v. Young, 21 N.C. App. 424, 425, 204 S.E.2d 711, 712 (1974) (collecting cases). "The essential elements of res judicata are (1) a final judgment on the merits in a prior suit; (2) an identity of the cause of action in the prior suit and the present suit; and (3) an identity of parties or their privies in both suits." Pate v. N.C. Dep't of Transp., 176 N.C. App. 530, 534–35, 626 S.E.2d 661, 665 (2006) (quotation omitted). As discussed, Suarez's claim lacks a common identity with defendants' counterclaim. In sum, the Painter factors counsel that defendants' breach of contract claim is not compulsory.

In opposition, defendants make several arguments. First, defendants note that Suarez puts

7

the alleged debt and the interest on that alleged debt in issue in his complaint. The court, therefore, must resolve each party's contractual obligations to resolve the claim and counterclaim. Second, if the court does not decide the breach of contract claim in this lawsuit, res judicata may preclude defendants from pursuing the debt in a subsequent suit. Third, because Suarez challenges the validity of the alleged debt, the parties must present evidence on that issue for both claims. Fourth, the claims both "originate" in the rental agreement and Suarez's alleged breach. See [D.E. 50] 5–7.

The court rejects defendants' arguments. Assuming without deciding that Suarez challenges the validity of the alleged debt, Suarez's NCDCA claim does not rest on the alleged debt's validity, but rather on its existence. Suarez does not deny that an alleged debt exists in this case, nor could he—the existence of a "debt" is a necessary element of his NCDCA claim. See, e.g., Ayers, 138 N.C. App. at 263, 531 S.E.2d at 233. Defendants second argument concerns issue preclusion, not res judicata. See, e.g., Strates Shows, Inc. v. Amusments of Am., Inc., 184 N.C. App. 455, 460–61, 646 S.E.2d 418, 423 (2007). As discussed, there may be an evidentiary overlap concerning the claims, and a logical nexus exists between them. Defendants do not assert, however, that the evidentiary overlap is "substantial." Rightly so. Aside from the alleged debt, Suarez must also demonstrate five additional elements—each unrelated to the rental agreement—to prove his NCDCA claim.

Alternatively, defendants argue that, if the court finds its breach of counterclaim is permissive, the court should exercise supplemental jurisdiction over the claim under 28 U.S.C. § 1367. See [D.E. 50] 8. In support, defendants assert that when Congress enacted section 1367 in 1990, it abrogated Painter and other Fourth Circuit precedent requiring a permissive counterclaim to have its own jurisdictional base. According to defendants, the plain text of section 1367(a) compels this conclusion. In support, defendants note that the text of section 1367(a) does not

8

incorporate Rule 13(a)'s distinctions between permissive and compulsory counterclaims. Rather, section 1367(a) requires a court to determine whether the counterclaim is part of the same "case or controversy" under Article III. See id. 9–12.[2] Defendants argue that their breach of contract counterclaim is part of the "case or controversy" concerning Suarez's NCDCA claim. See id. 13–14.

Defendants' textual argument has force, but this court cannot accept it. Under section 1367(a), a district court "shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that [it] form[s] part of the same case or controversy under Article III of the United States Constitution," subject to exceptions in subsections (b), (c), and (d). 28 U.S.C. § 1367(a). "[B]efore Congress enacted 28 U.S.C. § 1367 in 1990, the Fourth Circuit held that federal courts did not have jurisdiction over permissive counterclaims absent an independent basis for federal subject-matter jurisdiction." O'Fay, 2010 WL 9478988, at *5; see Painter, 863 F.2d 331–32; Sue & Sam Mfg. Co., 538 F.2d at 1051. Within the Fourth Circuit, district courts continue to recognize this principle as binding even after section 1367's enactment. See, e.g., Carroll v. Dan Rainville & Assocs. Inc., No. SAG-17-849, 2017 WL 4777706, at *2–4 (D. Md. Oct. 23, 2017) (unpublished); CSR, Inc. v. Foster-Bey, No. 1:16cv1227 (JCC/IDD), 2017 WL 1929439, at *3 (E.D. Va. May 10, 2017) (unpublished); Ginwright v. Exeter Fin. Corp., No.

---

[2] 28 U.S.C. § 1367(a) states:

> Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.

28 U.S.C. § 1367(a).

TDC-16-0565, 2016 WL 5867443, at *2 (D. Md. Oct. 6, 2016) (unpublished) (collecting cases); Moskovvitz v. Jacobson Holman, PLLC, No. 1:15-CV-336, 2015 WL 4255100, at *3 (E.D. Va. July 13, 2015) (unpublished); Williams v. Long, 558 F. Supp. 2d 601, 603 (D. Md. 2008); BidZirk, LLC v. Smith, No. 6:06-109-HMH-WMC, 2006 WL 3242333, at *2 (D.S.C. Nov. 7, 2006) (unpublished); Harrison v. Grass, 304 F. Supp. 2d 710, 712–13 (D. Md. 2004); Carbon Fuel Co. v. USX Corp., 867 F. Supp. 414, 416–17 (S.D. W. Va. 1994). But see Sweeney v. Pa. Nat'l. Mut. Cas. Ins. Co., 1:05CV00931, 2006 WL 8447919, *1–2 (M.D.N.C. July 11, 2006) (unpublished).

The court recognizes that the First, Second, and Seventh Circuits have held that a court's supplemental jurisdiction under section 1367 extends to Article III's "cases and controversies" limit. See Global NAPs, Inc. v. Verizon New England, Inc., 603 F.3d 71, 76 (1st Cir. 2010); Jones v. Ford Motor Credit Co., 358 F.3d 205, 212–15 (2d Cir. 2004); Channell v. Citicorp Nat'l Servs., Inc., 89 F.3d 379, 384–86 (7th Cir. 1996); cf. Ambromovage v. United Mine Workers of Am., 726 F.2d 972, 990 (3d Cir. 1984).[3] A leading federal courts treatise also endorses this view. See 13D Charles Alan Wright, Arthur R. Miller, Edward H. Cooper, & Richard D. Freer, Federal Practice and Procedure § 3567.1 (3d ed. 2008). Nonetheless, the court also recognizes that there is more than a colorable

---

[3] The Third Circuit abandoned the requirement that permissive counterclaims always require an independent jurisdictional basis before Congress enacted the supplemental jurisdiction statute. See Ambromavage, 726 F.2d at 990. Since Congress enacted 28 U.S.C. § 1367, the Third Circuit has not addressed the compulsory-permissive distinction for purposes of analyzing federal subject-matter jurisdiction, and district courts within the Third Circuit continue to disagree on whether an independent jurisdictional basis is required for permissive counterclaims. Compare Wilson v. Wings Over Happy Valley MDF, LLC, No. 4:17-CV-00915, 2018 WL 437385, at *2–*5 (M.D. Pa. Jan. 16, 2018) (unpublished) and Alpern v. Cavarocchi, No. 98-3105, 1999 WL 257695, at *9–*11 (E.D. Pa. Apr. 28, 1999) (unpublished) (requiring no independent basis for permissive counterclaims if section 1367(a) is satisfied) with Stewart v. Lamar Adver. of Penn LLC, No. 03-2914, 2004 WL 90078, at *1, *3 (E.D. Pa. Jan. 14, 2004) (unpublished) (requiring independent jurisdictional basis) and S. Megga Telecomms. Ltd. v. Lucent Techs., Inc., No. 96-357-SLR, 1997 WL 86413, at *9 (D. Del. Feb. 14, 1997) (unpublished) (same).

10

argument to the contrary based on the theory that section 1367 "codified" existing common law doctrines of pendent and ancillary jurisdiction "under a common heading" of supplemental jurisdiction. City of Chicago v. Int'l Coll. of Surgeons, 522 U.S. 156, 165 (1997); Ginwright, 2016 WL 5867443, at *2.

The Fourth Circuit has not examined its holdings in Painter and Sue & Sam Mfg. Co. in a published opinion after Congress enacted section 1367 and has continued to apply the precedent in unpublished cases. See, e.g., Ginwright, 2016 WL 5867443, at *2; cf. Vaughan, 217 F. App'x. at 218 n.18; Monsen, 82 F. App'x. at 298; Shanaghan v. Cahill, 58 F.3d 106, 109–10 (4th Cir. 1995). It is the Fourth Circuit, not this court, that has the power to abrogate Fourth Circuit precedent. See, e.g., United States v. Middleton, 883 F.3d 485, 491 (4th Cir. 2018) ("Prior decisions of a panel of the court are binding . . . unless and until overturned en banc."); Colby v. J.C. Penney Co., 811 F.2d 1119, 1123 (7th Cir. 1987) ("[T]he decisions of a superior court in a unitary system bind the inferior courts."); cf. Rodriguez de Quijas v. Shearson/Am. Express, Inc., 490 U.S. 477, 484 (1989) ("If a precedent of this Court has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the Court of Appeals should follow the case which directly controls, leaving to this Court the prerogative of overrule its own decisions."). Accordingly, this court must follow Painter and Sue & Sam Mfg. Co. Thus, defendants' breach of contract counterclaim must have an independent jurisdictional base for this court to exercise supplemental jurisdiction.[4] Because defendants' counterclaim lacks such a base, the court grants Suarez's motion to dismiss.

---

[4] Defendants also invite the court to exercise jurisdiction over the breach of contract permissive counterclaim under the "setoff exception." See [D.E. 50] 14–16. As discussed, Painter and Sue & Sam Mfg. Co. require a permissive counterclaim to have an independent jurisdictional base. Assuming without deciding that the setoff exception applies, it does not provide such a base. See id. Accordingly, the court declines defendants' invitation.

11

III.

In sum, the court GRANTS plaintiff's motion to dismiss defendants' amended counterclaim [D.E. 47] for lack of subject-matter jurisdiction.

SO ORDERED. This 8 day of September 2020.

JAMES C. DEVER III
United States District Judge